**Charles ELLZEY, Petitioner,**

v.

**C. E. BREAZEALE, Superintendent of the Mississippi State Penitentiary, Respondent.**

**Civ. A. No. 4119.**

United States District Court
S. D. Mississippi,
Jackson Division.

Nov. 8, 1967.

Alvin J. Bronstein, Jackson, Miss., for plaintiff.

Guy N. Rogers, Jackson, Miss., for defendant.

## OPINION OF THE COURT

DAN M. RUSSELL, Jr., District Judge.

This matter is before the Court on a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. The petition charges that both petitioner's indictment for murder of a white man in 1958, and his sentence for life following a guilty plea, were illegal and void because of the systematic exclusion of Negroes from the jury venire from which was drawn the grand jury which indicted petitioner, a Negro, and the petit jury which passed on his conviction, and because his plea of guilty was neither a waiver of his right to object to the exclusion, nor was it voluntarily given.

Petitioner Ellzey originally filed for a writ of error coram nobis in the circuit court of Pike County, Mississippi, in May 1966. Following a hearing, the court granted the petition. The State of Mississippi appealed this decision, with supersedeas, to the state supreme court. Pending the appeal, the supreme court discharged the supersedeas, remanded Ellzey to the Pike County jail, and ordered a hearing on whether he should be entitled to bail. Bail was denied and petitioner appealed. By stipulation, the records on the state's appeal from the error coram nobis hearing and on petitioner's appeal from the denial of bond were incorporated into a single record. Before decision by the state supreme court, Ellzey, in October 1966, was re-indicted by a Pike County grand jury for the same offense as in his original indictment. In its opinion rendered March 31, 1962 the supreme court of Mississippi found that the state's appeal was not moot, reversed the circuit court of Pike County, and reinstated petitioner's former life sentence.

The aforesaid record, Ellzey's petition containing the same grounds for relief as were presented in the state court proceedings, the state's response, and briefs are before this Court, a hearing and the physical presence of petitioner having been waived.

On the night of January 13, 1958, Charles Ellzey, then about 18 years old, and his 14 year old brother were rabbit hunting with head lamps and shotguns on land adjacent to that on which the deceased, Howard Hawkins, maintained a pasture. As they were crossing a fence, Hawkins accosted the two brothers, words passed, and shooting followed. Ellzey alleged Hawkins shot first, hitting Ellzey in the right hand and forearm, and that he fired back. Both boys ran from the scene to their home. From there the brother went in one direction, and Ellzey in another to the home of an elderly colored woman, Mrs. Mattie Young. She notified authorities who came and arrested Ellzey. Both brothers were taken to jail, put in separate cells, and interrogated over a period of weeks by from one to five officials. Statements were taken without benefit of counsel, and defendant at no time was advised of any constitutional rights or right to representation. Ellzey testified that he was frightened, in pain, and was offered no medical attention for the bullet wounds, which injuries were denied by the State. About a month after his arrest, the accused apparently had a preliminary hearing before a Justice of the Peace. No plea was made, nor did he have counsel. Although the exact dates are in dispute, the lower state court judge found that Ellzey was indicted by the Pike County circuit court grand jury on March 17, 1958, and that on March 21 two local attorneys were appointed to represent Ellzey, being the same day he was first called for arraignment, and on which day defendant entered a plea of not guilty. The case was called again March 24 and set for trial on March 28. Meanwhile, on motion of counsel, a special venire had been called for the trial. On March 28, 1958, following a conference in the trial Judge's chambers attended by Ellzey, his counsel, the State's counsel, and the widow of the deceased Hawkins, Ellzey returned to the courtroom and pled guilty on assurance he

would be sentenced to life imprisonment rather than face trial and conviction, the penalty for which could be death. The trial jury was so instructed and brought in a verdict of guilty, with a sentence of life imprisonment.

■■■ Following a very full hearing on the error coram nobis procedure, held approximately 8 years after the conviction, the circuit court Judge, who was a successor to the trial Judge, issued a comprehensive opinion. He found that in the 10-year period from 1950 to 1960, there were approximately 12,147 white, adult residents of Pike County, of whom 7,000 to 8,000 were consistently qualified electors; that in 1950 there were 7,608 adult, non-whites and in 1960 there were 6,936 such residents. Of these only 150 were registered voters in 1958. During 1948 to 1958, approximately 3100 to 3200 names were drawn for jury duty, of which 12 to 25 were non-whites. No Negroes ever served on a grand jury during that 10 year period and there were no Negroes called to serve on the special venire drawn to try Ellzey. The Court cited state court decisions, beginning with Farrow v. State, 91 Miss. 509, 45 So. 619, and including such recent cases as Harper v. State, 251 Miss. 699, 171 So. 2d 129; Black v. State, Miss., 187 So.2d 815; Shinall v. State, Miss., 187 So.2d 840; and Thompson v. State, Miss., 188 So.2d 239; and federal cases beginning with Patton v. State of Mississippi, 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76, and including the Fifth Circuit recent cases of United States ex rel. Goldsby v. Harpole, 263 F.2d 71, cert. den., 361 U.S. 838, 80 S.Ct. 58, 4 L.Ed.2d 78; Gordon v. Breazeale, D.C., 246 F.Supp. 2; and Smith v. Breazeale, D.C., 245 F.Supp. 978, in support of his finding that, although the board of supervisors, the chancery clerk, the circuit clerk, and the sheriff strictly complied with all state statutes governing the jury process and were guilty of no intentional exclusion of Negroes from jury duty in 1958, nonetheless the number of Negro qualified electors, 150, was out of all proportion to the number of white qualified electors, at least 7,000; that the number of Negroes called for jury duty (none for grand jury) was but a token representation; that the State failed to refute the presumption that Negroes were systematically excluded from jury duty,[1] and that such exclusion from both juries violated Ellzey's constitutional rights, unless he voluntarily waived this right to object by entering a plea of guilty. This Court adopts the findings and conclusions of the circuit court and cites additional authorities: United States ex rel. Seals v. Wiman, 5th Cir., 304 F.2d 53; Whitus v. Balkcom, 5th Cir., 333 F.2d 496; Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759; Mitchell v. Johnson, D.C., 250 F.Supp. 117; Scott v. Walker, 5th Cir., 358 F.2d 561; Davis v. Davis, 5th Cir., 361 F.2d 770; Whitus v. State of Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599; and the most recent state case that has come to the court's attention, Bass v. State, 254 Miss. 723, 182 So.2d 591.

■■■ With respect to whether or not Ellzey, by his plea of guilty, waived his constitutional rights to due process and equal protection, as guaranteed by the Fourteenth Amendment, the circuit court found that he did not. The evidence before the circuit court showed conclusively that Ellzey at the time of the alleged crime was an 18 year old Negro boy, who had been to only the third or fourth grade, and who could barely read and write. One of his lawyers, appointed after the indictment, stated that he was aware of the right to object to the juries, had never done so in a criminal case, and had not informed Ellzey of this right. It is entirely probable that had counsel done so, Ellzey would not have had the capacity to understand. He had had no previous brushes with the law. Counsel frankly admitted: "I wouldn't say he intentionally waived. I would say by his plea of guilty he waived it." The Supreme Court of Mississippi agreed in its

---

1. Until 1956, Mississippi statutes required that jurors be qualified electors.

reversal, Ellzey v. State, 196 So.2d 889, citing Section 2450 of the Mississippi Code of 1942, and following the holding of United States ex rel. Goldsby v. Harpole, supra, that there was a waiver of objection to the grand jury. The court then held that the question of qualification of the trial jury was never presented to the trial court because Ellzey voluntarily pled guilty. This Court cannot agree to this application of the Goldsby case in view of so many holdings to the contrary, holdings, which in the absence of an "intentional" waiver, preserve the right to object to the entire venire from which the grand and petit jurors are drawn.

As early as Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, waiver is defined as "an intentional relinquishment or abandonment of a known right or privilege."

In Patton v. State of Mississippi, supra, it was stated: "When a jury selection plan whatever it is, operates in such way as always to result in the complete and long-continued exclusion of any representative at all from a large group of Negroes, or any other racial group, indictments and verdicts returned against them by juries thus selected cannot stand."

■ The failure of a Negro defendant in state court to object on his trial for rape to the systematic exclusion of members of his race from both grand jury and petit jury service did not preclude raising of question in federal habeas corpus proceeding. United States ex rel. Seals v. Wiman, supra.

In United States ex rel. Goldsby v. Harpole, supra, the evidence established that the defendant's constitutional right to object to the exclusion of Negroes in the grand jury had been effectively waived, but, as to the petit jury, had not.

In Smith v. Breazeale, supra, the attorney did not consult petitioner on the question of whether he desired to forego his right to challenge the illegal juries, since the attorney believed them to be legal. The Court stated that it could not say that petitioner, under these circumstances, knowingly and understandingly waived the privilege of objection.

The Fifth Circuit in Cobb v. Balkcom, 339 F.2d 95, held that what constitutes a valid waiver of the right to challenge grand and trial juries for the systematic exclusion of Negroes is a federal question. Then the Court found that the prisoner's failure to challenge the grand jury indictment or trial jury for exclusion of Negroes in a state court criminal proceeding resulting in a murder conviction did not constitute a waiver where trial counsel did not discuss the right with defendant or his mother, and he was young and inexperienced and had no lawyer until counsel was appointed after the indictment, and the fact that his lawyer was satisfied with the grand and trial juries was insufficient to result in waiver:

In Whitus v. Balkcom, supra, the Fifth Circuit again found that nonassertion by attorneys for a Negro of a timely objection in state court to the systematic exclusion of Negroes from jury service did not constitute an effectual waiver and did not bar federal habeas corpus relief.

Gordon v. Breazeale, supra, has gone a step further, and holds that the absence of an express waiver of a second trial jury did not effectively waive the right to a collateral attack.

Finally in a state case reported as recently as June, 1966, Thompson v. State, 188 So.2d 239, the Mississippi Supreme Court recognized that there is some doubt as to whether or not there is an effective waiver of a federal constitutional right by a failure to raise such right during trial.

The fact that Ellzey pled guilty under the circumstances stated above, was not an effective waiver. His right to object to the grand jury and the special venire from which his trial jury was drawn,

remains. Had he known of this right it may or may not have effected his plea.[2]

Ellzey is still detained by the state, and is entitled to a re-indictment and trial in a manner consistent with the Constitution. Bond is denied.

An order may be submitted by petitioner's counsel to the extent stated.

---

2. Ellzey has served over nine years' time in the state penitentiary, and normally would soon be eligible for parole. The circuit court judge questioned him carefully on his attitude regarding the chance he will take on a second trial of getting a sentence that will add additional time. He insisted on proceeding then as he has with this application here.