Cleveland **COLSON**

v.

Lamont **SMITH**, Warden, Georgia State Prison, Reidsville, Georgia.

**Civ. A. No. 11547.**

United States District Court,
N. D. Georgia,
Atlanta Division.

July 17, 1970.

Cleveland Colson, pro se, Albert G. Norman, Jr., Atlanta, Ga., for plaintiff.

Arthur K. Bolton, Atty. Gen., Atlanta, Ga., Harold N. Hill, Jr., Executive Asst. Atty. Gen., Marion O. Gordon, Mathew Robins, Asst. Attys. Gen., for defendant.

## ORDER

EDENFIELD, District Judge.

On October 14, 1969, this court entered an order holding that the State's indictment of the above-named petitioner was invalid in that it was returned by an illegally constituted grand jury. The State appealed that decision and the Court of Appeals for the Fifth Circuit has remanded for findings of fact and conclusions of law on the petitioner's claim of ineffective assistance of counsel and on the involuntariness of defendant's guilty plea.

The record shows that petitioner was arrested on February 7, 1963, and that on February 11, 1963, he was indicted for a robbery which had occurred on February 6th. When he was arraigned before Judge Moore he entered a plea of not guilty and counsel was appointed to represent him.

Petitioner testified that his court-appointed lawyer visited the Fulton County jail to talk to him once for about ten or fifteen minutes between the time counsel was appointed by Judge Moore and April 1st when the case was called for trial before Judge Alverson. He testified further that counsel informed him that one of his codefendants was going to testify against him, that counsel could not undertake to defend him in a jury trial unless petitioner could pay him, and that the best thing for petitioner to do was to plead guilty. Petitioner testified that he told counsel that he was innocent and that he would not plead guilty. He also testified that he tried to give counsel the names of witnesses who would testify in his behalf but that counsel would not listen to him, and that he later wrote three letters to counsel but these letters were never acknowledged and counsel made no effort to locate petitioner's witnesses or to check out his story.

Petitioner's court-appointed counsel, on the other hand, testified that he visited the jail on two occasions after Judge Moore appointed him to represent Colson, that he was quite willing to defend petitioner at jury trial without pay, and that he did not tell Colson to plead guilty. According to counsel, petitioner wanted to stick with his not guilty plea and wanted to give counsel the names of witnesses who would be helpful to his defense but could not remember any names. Counsel conceded that he made no effort to locate the witnesses.

Counsel testified at one point that he was ready for trial when Colson entered his guilty plea (R. 127) but later indicated that he was not prepared for trial when the case was called on April 1st and that he had not anticipated that the trial would actually take place at that time (R. 145–146). He stated that he at first informed the court that Colson wanted to plead not guilty but that after the two co-defendants who were present that day entered guilty pleas [1] Colson, too, decided to enter a guilty plea.

Colson concedes that he eventually entered a guilty plea but contends that he did so only after counsel had failed to take any steps in his behalf and had

---

[1]. It appears from the indictment, however, that on the day Colson entered his guilty plea the Solicitor nol prossed the indictment against the other two defendants who were present that day.

advised petitioner that the judge had told counsel that Colson would be sentenced to death by electrocution if found guilty by a jury and that if he went to trial his prior record would be typed up and presented to each member of the jury.

On the basis of the evidence adduced at the hearing in this court in September 1969 the court concludes that petitioner's court-appointed counsel, who admittedly was handling some 5,000 criminal cases a year at that time, did not devote sufficient time to this case to enable him to provide petitioner with effective assistance of counsel. By either version of the facts he had consulted with Colson for only a few minutes while Colson was awaiting trial and that time was spent primarily in relaying to Colson what the Solicitor had told counsel about the case. This was a capital case and yet no witnesses were contacted and there were no conferences regarding trial strategy and preparation—despite the fact that Colson steadfastly maintained that he was innocent and that he would not enter a guilty plea. Furthermore, counsel did not advise petitioner of the alternatives open to him, other than to inform him that he would probably get the death penalty if he went to trial.[2]

From these facts the court concludes that petitioner Colson's plea of guilty was the product of ignorance of his rights under the law, fear of the consequences of going to trial for which counsel admittedly was not prepared, and ineffective assistance of counsel. It therefore was not a voluntary plea of guilty and the conviction based thereupon is invalid.

The foregoing findings are supplemental to the court's original findings that the grand jury which indicted petitioner was unlawfully constituted and that the indictment therefore was void. In the view this court takes of the matter, a finding that the guilty plea was voluntary would not have required a different result for while it is well recognized that a voluntary plea of guilty waives all *nonjurisdictional* defects in the prior proceedings, we do not believe this rule encompasses a constitutional defect which, as here, is plainly jurisdictional in nature. When an indictment is required for the institution of criminal proceedings, lack of an indictment goes to the court's jurisdiction. United States v. Choate, 276 F.2d 724, 728 (5th Cir. 1960). If the indictment is returned by a grand jury which was selected in a racially discriminatory manner the indictment itself is void, and if the indictment is void there is no charge to which the accused can legally be held to answer, Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887).

Jurisdiction cannot, of course, be conferred by waiver or consent, United States v. Choate, *supra* 276 F.2d at 728, but this is not to say that in no circumstances could an indictment such as the one returned against this defendant be valid, because absent a substantial allegation that the grand jury was improperly constituted and that the trial court therefore does not have jurisdiction there is a presumption that the indictment is valid. A defendant may exercise his right to challenge the jury as being racially discriminatory or he may wave his right to do so, but the waiver, if any, comes not from the mere fact that he enters a guilty plea (which waives *nonjurisdictional* defects), but, rather, from the fact that he intentionally fails to exercise his right to be indicted by a fair and impartial jury.[3]

---

2. The Fifth Circuit has recently pointed out that merely permitting a client to plead guilty without first having informed him of his right to attack the composition of the grand jury which indicted him may in certain circumstances amount to ineffective assistance of counsel. Windom v. Cook, 423 F.2d 721 (5th Cir. 1970).

3. The constitutional right involved in the case of a state defendant is not a constitutional right to be indicted by a grand jury—for there is no such right, Hurtado v. California, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884)—but, rather, the right to be indicted only by a fair and impartial grand jury when the state has

 Waiver will not be presumed from a silent record, however. To the contrary, the courts indulge every reasonable presumption against waiver, Glasser v. United States, 315 U.S. 60, 70–71, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and for a waiver to be effective it must be clearly established that there was an intentional relinquishment or abandonment of a right or privilege which was known to the defendant at the time of the act alleged to constitute a waiver. Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966); Gibbs v. Burke, 337 U.S. 773, 69 S.Ct. 1247, 93 L.Ed. 1686 (1949); Johnson v. Zerbst, *supra*. Accordingly, "the Supreme Court does not readily find a waiver of important constitutional rights. Every presumption is against such a finding * * * [and] very strong proof is necessary to convince the high court that a constitutional right has been waived." C. Antieu, *supra*, § 15:31 at 683.

 A state may, of course, refuse to permit a defendant to object to the composition of either the grand or petit juries if he fails to do so at a specific point in the proceedings against him, but it is no longer open to question that the determination as to whether there has been an effective waiver of rights guaranteed by the federal Constitution must be determined by federal, not state, standards. *E. g.*, Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019 (1938); Cobb v. Balkcom, 339 F.2d 95 (5th Cir. 1964); Whitus v. Balkcom, 333 F.2d 496 (5th Cir. 1964) cert. denied, 379 U.S. 931, 85 S.Ct. 329, 13 L.Ed.2d 343; United States ex rel. Seals v. Wiman, 304 F.2d 53 (1962), cert. denied, 372 U.S. 915, 83 S.

Ct. 717, 9 L.Ed.2d 722 (1963). The burden of proving waiver is on the State, and when the State does not even attempt to prove that there has been an effective waiver a finding that the grand jury was selected in a racially discriminatory manner entitles the prisoner to release.

In the instant case there was no evidence whatever upon which the court could base a finding that Colson knowingly and understandingly waived his right to be indicted by a fair and impartial jury. Not only was there not strong proof; there was no proof at all. It follows, therefore, that having sustained his burden of demonstrating that the jury was in fact selected in a racially discriminatory manner petitioner is entitled to release, subject to the State's right to reindict him as set forth in the court's order of October 14, 1969.

---

provided for indictment by a grand jury at all.

"Where states use grand juries under their state constitutions, an individual is denied the equal protection of the laws when he is indicted by a grand jury from which the members of his racial or

ancestral group have been regularly and systematically excluded." Cassell v. Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839 (1950). *See also* C. Antieu, Modern Constitutional Law § 5:13 at 298.