Matthew WINTERS, Petitioner,

v.

Thomas D. COOK, Superintendent of the Mississippi State Penitentiary, Respondent.

No. GC 7120–K.

United States District Court, N. D. Mississippi, Greenville Division.

Nov. 1, 1971.

Roy Haber, Jackson, Miss., for petitioner.

Guy Rogers, Asst. Atty. Gen., Jackson, Miss., Pat Barrett, Lexington, Miss., for respondent.

## MEMORANDUM OPINION

KEADY, Chief Judge.

Matthew Winters, the petitioner, on October 21, 1963, entered a plea of guilty in the Circuit Court of Holmes County, Mississippi, to a charge of murder, was convicted upon such plea, and on October 24, 1963, was sentenced by the Circuit Court of Holmes County to life imprisonment. Petitioner is presently confined at Mississippi State Penitentiary, Parchman, Mississippi, pursuant to that sentence.

Subsequently, petitioner filed in the Circuit Court of Holmes County, a motion to vacate his sentence on the following grounds:

1. That petitioner was denied the equal protection of the laws in that at

the time of petitioner's conviction upon his plea of guilty, negroes were systematically excluded from service on grand and petit juries in Holmes County, and, specifically, from the grand jury which indicted petitioner.

2. That petitioner was denied the effective assistance of counsel in that petitioner's "court-appointed" attorney failed to make proper investigation of the case, failed to confer with petitioner except for a brief period immediately prior to the entry of the plea of guilty, and failed to properly advise with petitioner.

3. That petitioner's plea of guilty was not understandingly and voluntarily entered.

The Circuit Court, after an evidentiary hearing, denied the motion to vacate by memorandum opinion and found that petitioner did have adequate assistance of counsel; that his plea of guilty was knowingly, intelligently and voluntarily entered; and that such a guilty plea waived all non-jurisdictional defects, including the alleged defect in the selection of the grand jury. Petitioner appealed to the Supreme Court of Mississippi, which affirmed the decision of the Circuit Court. Winters v. State, 244 So. 2d 1 (Miss.1971).[1]

Being dissatisfied with the results obtained in the state court proceedings, petitioner has filed in this court his petition for a writ of habeas corpus under 28 U.S.C. § 2241 et seq. Petitioner was granted leave to proceed *in forma pauperis*, and a show cause order issued to respondent. Written briefs have been filed by both parties, and the parties have, by stipulation, waived evidentiary hearing and submitted the cause on the pleadings, briefs and the record made in the state court. It is admitted by respondent that petitioner has exhausted his state remedies within the meaning of 28 U.S.C. § 2254.

Petitioner is represented here by the same counsel who represented him in the state court post-conviction proceedings, but not the same counsel who represented him at the time of, and prior to, the entry of his guilty plea and his subsequent sentencing thereon. Petitioner's contentions here are essentially the same as those presented in the post-conviction proceedings in the state court. Respondent contends that petitioner's plea of guilty was understandingly and voluntarily entered upon advice of competent counsel and that petitioner thereby waived any defect in the composition of the grand jury.

## FINDINGS OF FACT

On April 14, 1963, one E. T. Branch, an adult white male, was killed at a place of business, described as a "beer joint", operated by him in Holmes County. Shortly, thereafter, petitioner, a negro male, was arrested and charged with the murder of Branch. At that time, petitioner was 18 years of age and had left school in the fifth grade. He last attended school at age eleven, and had worked for a veterinarian at Kosciusko since that time. Although lacking in formal education, petitioner was intelligent and capable of normal understanding. Prior to his arrest on the murder charge, he had had two brushes with the law—a charge of driving while intoxicated in 1963 for which he paid a fine, and a charge of disturbing the peace, the outcome of which is not clear, but as a result of which, petitioner spent about six hours in jail. He had never been in a courtroom before April of 1963.

On April 18, 1963, the grand jury of Holmes County, returned an indictment against petitioner for the murder of Branch. On April 19, 1963, petitioner was arraigned before the Circuit Court of Holmes County, and entered a plea of not guilty to the charge of murder. A period of only five days elapsed between the killing of Branch and the arraignment of petitioner on the murder

---

1. The pertinent portions of the opinion of the Circuit Court of Holmes County are quoted at length in the opinion of the Supreme Court of Mississippi. 244 So.2d, at page 2.

charge. At some unspecified point during that five-day period, members of petitioner's family employed David E. Crawley, Jr., a practicing member of the Mississippi State Bar since 1942, as petitioner's attorney. Mr. Crawley is white. Mr. Crawley engaged in the general civil and criminal practice of law at Kosciusko, from 1942 until 1953, at which time he began to limit his practice, more or less, to the handling of personal injury and workmen's compensation matters on behalf of plaintiffs. During his career at the bar, Mr. Crawley had handled between 25 and 75 murder cases and 15 to 20 other capital cases. He estimated that he had handled a total of between 150 and 200 criminal matters of all types at the time of the habeas corpus hearing in state court. Mr. Crawley had represented the Winters family on other occasions and considered them to be among his best clients. He estimated that his clientele in criminal matters consisted of approximately 25% whites and 75% negroes. At the time he accepted employment as petitioner's defense counsel, Mr. Crawley was aware of the defenses available in a criminal proceeding, including the right of petitioner to challenge the racial composition of the grand jury which indicted him. He had never filed such a challenge himself, but knew of one case in which a white attorney had challenged the composition of a jury on racial grounds in Kosciusko, without adverse social or economic effects.

■ After being employed by petitioner's family and before petitioner's

arraignment in the Circuit Court, Mr. Crawley conferred with petitioner in the Holmes County Jail at Lexington,[2] and was given the following version of events leading up to, and including, the death of Branch:

> Petitioner and a friend were at the beer joint operated by Branch. Branch was present, as were others, including at least one employee of Branch and certain unidentified members of petitioner's family. Petitioner began talking to a negro female employee, to which Branch apparently objected. Without warning, Branch slapped petitioner "rather severely across the side of the head." At this, petitioner became "enraged and infuriated," left the premises of Branch, got in his automobile and went with his friend to the friend's house, a distance of some 20 miles from Branch's establishment, for the purpose of obtaining a gun. A shotgun and shells were obtained at the friend's house, and petitioner and his friend then returned to Branch's place of business. A total distance of approximately 40 miles had been travelled from the beer joint to the friend's house and back. Upon his return to the Branch establishment, petitioner went inside, told the members of his family present to leave and get in the car, that he had "a little business to attend to," and after the members of petitioner's family had left the establishment, stuck the shotgun through a window or door and fired at Branch, killing him.

2. Petitioner testified that the County Sheriff and a deputy coerced him into signing a confession on the day of his arrest by beating him until he agreed to confess. He further testified that he attempted to tell his attorney about the beating and resulting confession, but his attorney would not take time to talk with him and refused to listen to anything concerning the alleged beating or confession. Crawley emphatically denied that petitioner ever made any attempts to tell him about a beating or a confession and denied that he had ever received any information concerning such an incident. Although Crawley interviewed petitioner

at the Holmes County Jail less than five days after the arrest of petitioner, he saw no signs of a beating. No statement of petitioner purporting to be a confession was ever used against him, and his plea of guilty was entered approximately six months after the alleged coercion occurred. Under the circumstances, even if a confession was coerced from petitioner it would not have rendered petitioner's guilty plea invalid. McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970).

After hearing this story from petitioner, Mr. Crawley continued his investigation of the case by interviewing members of petitioners family to determine whether or not petitioner had told them the same story. He found this to be the case. He talked to no witnesses outside of petitioner's family.

Feeling that the only possible defense to the charge of murder was insanity, Mr. Crawley filed a motion for a mental examination of petitioner, pursuant to which the Circuit Court ordered petitioner transported to Mississippi State Hospital at Whitfield for mental examination on April 23, 1963. This necessitated a continuance of the case to the October, 1963 term of the court. Petitioner remained at the Mississippi State Hospital for about six weeks and upon completion of the examination was returned to the Holmes County Jail. The psychiatric report based upon the examination was entirely negative insofar as a defense to the charge of murder was concerned. Following receipt of the report on the mental examination of petitioner, Mr. Crawley discussed petitioner's case with Mr. Pat Barrett, county attorney of Holmes County, and, after the commencement of the October, 1963 term of the court, with Mr. George Everitt, the district attorney. In the course of those discussions he learned that the testimony of the state's witnesses as to the facts surrounding the death of Branch would be substantially the same as the version given to him by petitioner and by petitioner's family. Mr. Crawley then concluded that there was a high degree of probability that petitioner would be convicted of murder and would be given the death penalty. He also learned that members of the Branch family were exerting pressure upon the authorities to insist upon the death penalty for petitioner. Although Mr. Crawley was aware of petitioner's right to attack the exclusion of negroes from the grand jury which indicted him and

from the petit jury impaneled for the October term of the Circuit Court of Holmes County, he nevertheless felt that the facts of petitioner's case were such that no jury, regardless of how constituted, could fail to convict petitioner of the murder of Branch.[3]

He was extremely concerned that petitioner might receive the death penalty.

At that point, the saving of petitioner's life was uppermost in Mr. Crawley's mind. Pursuant to that line of thinking, he embarked upon the process of plea bargaining with the state's attorneys in an effort to obtain an agreement to recommend a sentence of life imprisonment in return for petitioner's plea of guilty. In the plea bargaining process, Mr. Crawley advised the state's attorneys that should he be forced to trial of petitioner's case, he would file a motion to quash the indictment on the ground of the systematic exclusion of negroes from service on the grand jury which indicted petitioner, and in the event that motion were overruled, he would immediately challenge the composition of the petit jury on the same ground. As a result of the plea bargaining process, the state agreed to recommend a life sentence in return for a guilty plea by petitioner.

Mr. Crawley had kept petitioner's family advised of his efforts to persuade the state to accept a guilty plea in return for recommendation of a life sentence for petitioner. He did not advise petitioner's family of petitioner's right to challenge the racial composition of the juries. On October 21, 1963, Mr. Crawley conferred with petitioner in a witness room adjacent to the courtroom in the Holmes County Courthouse. Mr. Crawley advised petitioner that the testimony of the witnesses would be adverse to petitioner and that it was Mr. Crawley's opinion that if petitioner went to trial, he would probably be convicted and sentenced to death. Mr. Crawley further explained to petitioner that if he entered a plea of guilty he would receive

---

3. Mr. Crawley was aware that Branch had a rather poor reputation, but felt that the probability of obtaining an acquittal for petitioner on that basis was too remote to risk a trial.

a life sentence and explained that petitioner would be eligible for parole after serving ten years of that sentence. At no time did Mr. Crawley advise petitioner that he had a right to challenge the racial composition of either the grand jury or the petit jury. Despite his awareness of petitioner's right to challenge the composition of the juries, Mr. Crawley felt that the preservation of petitioner's life was of greater importance than the vindication of that particular constitutional right.[4] On the basis of his attorney's advice, petitioner decided to change his plea to "guilty."

On the same day, petitioner and his attorney appeared before the Circuit Judge, and petitioner than and there changed his plea from "not guilty" to "guilty" of the murder of Branch. Before accepting petitioner's change of plea the Circuit Judge questioned him at some length in open court. Present at the time in addition to the judge were petitioner, Mr. Crawley, Mr. Barrett, the county attorney, and Mr. Everitt, the district attorney. The court advised petitioner that he had a right to a trial by jury and that his plea of guilty would result in a waiver of that right. Petitioner indicated to the court that he

understood this to be the case. The court further questioned petitioner as to whether his change of plea was induced by force, coercion or fear, to which petitioner responded that it was not. The court also inquired of petitioner if any inducement or promise of reward had been offered him in return for a plea of guilty, and petitioner replied that no such promise had been made to him. Petitioner was also asked by the court if he was entering a plea of guilty freely and voluntarily and because he was guilty of the crime charged and for no other reason. Petitioner responded in the affirmative. The court then inquired whether or not petitioner's attorney had advised petitioner of his rights and whether or not petitioner had any complaint or criticism concerning the services of his attorney. Petitioner replied that he had been advised of his rights by his attorney and that he had no complaint concerning his services. In the opinion of Mr. Crawley and Mr. Everitt, the responses of petitioner to the questions of the court were intelligent and responsive and clearly indicated that petitioner understood the questions, none of which petitioner undertook to deny in his testimony on the

---

4. An apt illustration of Mr. Crawley's view of his duties and responsibilities as petitioner's defense counsel is the following excerpt from the cross-examination of Mr. Crawley by petitioner's attorney in the evidentiary hearing held on the motion to vacate sentence in the Circuit Court of Holmes County:

"Q You did not file a motion to quash the indictment prior to arraignment?

A No, I did not.

Q Did it occur to you that under Mississippi law, you might have waived the defendant's right to object on the ground of systematic exclusion of negroes as jurors?

A I was aware that any motion must be filed before arraignment. I was also aware that in view of the seriousness of the constitutional questions that could be raised, that it would be reversible error for the court to overrule the motion, probably. 'Mr. Fitzgerald', the supreme thing in my mind at the time was saving this man's life. I felt then and now that I must do and did do at that time

all I could to save this man from the death penalty.

Q Were you concerned with whether or not you were making the decisions your client would have made?

A Well, insofar as making decisions are concerned, I accepted the responsibility of this man's destiny when I accepted employment. I was representing him to the best of my ability, and I cannot say I would have allowed him to make any decision which I felt would put his life in jeopardy. Before I could do that, I would have asked the court to allow me to withdraw, I could not knowingly allow him to make a decision which would put his life in jeopardy.

Q But, it went a little deeper than that because you did not inform him of what his rights were, did you, as to the composition of the jury?

A Insofar as his constitutional rights with regard to the composition of the Grand and Petit Juries, I did not discuss that with him, as I say, I was more concerned with saving this man's life than anything else."

motion to vacate. This court therefore finds that petitioner did understand what was being said to him by the state court and the questions asked him by that court prior to the acceptance of his guilty plea and further finds that his responses thereto were intelligent and responsive.

Upon completion of the questioning of petitioner by the court, the court accepted his change of plea to "guilty", and on October 24, 1963, petitioner was sentenced to life imprisonment for the murder of Branch. At no time did either petitioner's attorney or the state court advise petitioner of his right to challenge the racial composition of either the grand or petit juries, and petitioner was not aware of that right.

## CONCLUSIONS OF LAW

### I. EFFECTIVE ASSISTANCE OF COUNSEL

Petitioner's present criticism of his attorney and his characterization of the assistance rendered him by his attorney as "ineffective" are based upon Mr. Crawley's failure to advise him of his constitutional right to object to the systematic exclusion of negroes from jury service in Holmes County, Mississippi, and upon the alleged failure of Mr. Crawley to devote the necessary time, energy and interest to petitioner's defense.

The second criticism of Mr. Crawley's services is clearly not founded in fact. He interviewed petitioner at the Holmes County Jail promptly upon being employed and prior to the arraignment. This could not have been more than five days after the employment, and was probably less. After interviewing petitioner, Mr. Crawley promptly undertook such investigation as in his judgment was required. He then sought a mental examination of petitioner in order to determine whether or not the defense of insanity would be available. He conferred not only with petitioner, but with members of his family and with the

state's attorneys on numerous occasions. He was fully aware of all of petitioner's rights, but was also aware of the almost overwhelming evidence against petitioner. His devotion to petitioner's cause is amply demonstrated by the evidence.

■ Despite Mr. Crawley's devotion to and interest in petitioner's defense, did his failure to interview all available witnesses and his failure to advise petitioner of his constitutional right to object to racial discrimination in the jury selection process in Holmes County deprive petitioner of the effective assistance of counsel? The facts surrounding the death of Branch as related to Mr. Crawley by petitioner presented a clear case of murder under Mississippi law.[5] Mr. Crawley's conferences with members of petitioner's family confirmed that petitioner had given his family the same version of the facts. It should also be remembered that certain unidentified members of petitioner's family were present at the scene of the killing. It is not unreasonable to assume that those members of petitioner's family told what they knew either to Mr. Crawley or to the other members of the family. It is significant that Mr. Crawley's interviews with the family produced no conflicts with the version of the facts related to Mr. Crawley by petitioner. Mr. Crawley's conversations with the state's attorneys further confirmed petitioner's version of the facts. There is nothing before this court to indicate that even if Mr. Crawley had interviewed other witnesses he would have learned anything different from what he was told by petitioner, petitioner's family and the state's attorneys. It is possible, indeed likely, that some attorneys in the same circumstance might have interviewed other witnesses. However, in the absence of a showing that Mr. Crawley's failure *to interview such witnesses* resulted in his being unaware of available evidence which could have been used to the benefit of petitioner, the court is of the opinion that such failure did not

5. § 2215, Mississippi Code (1942).

render Mr. Crawley's assistance to petitioner ineffective.

■ Insofar as Mr. Crawley's failure to advise petitioner of his right to object to the systematic exclusion of negroes from jury service in Holmes County is concerned, the court is of the opinion that this, too, is an area in which equally competent counsel might have elected to proceed differently. In Mr. Crawley's judgment, however, the case against petitioner was so clear that the racial composition of the jury would have made no difference in whether an indictment or a guilty verdict were returned. He felt an overriding obligation to attempt to save petitioner's life, which he set out to do, and which he accomplished. Under those circumstances it cannot be said that Mr. Crawley's assistance to petitioner was rendered ineffective merely because he failed to advise petitioner of the existence of a constitutional right, the exercise of which Mr. Crawley honestly believed would be of no ultimate benefit to petitioner.

■ The test of whether or not the assistance of counsel to a defendant in a criminal proceeding has been "effective", within the meaning of the constitution, is not whether or not the advice was correct, or whether or not other attorneys in the same circumstances might have proceeded differently. The test is whether or not the advice or other actions of the attorney were within the range of competence demanded of attorneys in criminal cases. McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970). Edwards v. United States, 103 U.S.App.D.C. 152, 256 F.2d 707 (1958), cert. den. 358 U.S. 847, 90 S.Ct. 74, 3 L.Ed.2d 82. In the Fifth Circuit, effective counsel does not mean "errorless counsel" or "counsel judged ineffective by hindsight" but counsel "reasonably likely to render and rendering reasonably effective assistance." McKenna v. Ellis, 280 F.2d 592 (5 Cir. 1960), cert. den. 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961). Also, more is

required of an attorney where the plea is not guilty and the case goes to trial than in the case of a guilty plea. Lamb v. Beto, 423 F.2d 85 (5 Cir. 1970). Since the actions of Mr. Crawley on behalf of petitioner and his advice to petitioner were well within the range of competence required, petitioner was not deprived of the effective assistance of counsel.

## II. SYSTEMATIC EXCLUSION OF NEGROES FROM JURY SERVICE

■ For purposes of this opinion it will be assumed, without deciding, that negroes were systematically excluded from the grand jury which indicted petitioner and from the petit jury panel drawn for the October, 1963 term of the Circuit Court of Holmes County. It is alleged by petitioner, although denied by respondent, that according to the 1960 decennial census, there were in Holmes County, 2,218 white males and 3,913 non-white males eligible to serve as jurors. It is further alleged that approximately 99% of the non-whites were negroes. Thus, it is alleged, approximately 70% of the jury qualified males in the County were negroes, and that at the time of the indictment and sentencing of petitioner few, if any, negroes had ever been called for jury service. No proof was offered on this point in the state court proceedings, the trial judge limiting the state court hearing to the questions of effectiveness of counsel, waiver and the voluntariness of the guilty plea on the ground that it would be premature to consider the racial exclusion question unless one of the other issues were resolved in petitioner's favor. If proof had been taken on the racial exclusion question and if petitioner's proof thereon had been substantially as alleged in his petition here, such proof would have been sufficient to make out a *prima facie* case of systematic exclusion of negroes from jury service in Holmes County. United States ex rel Goldsby v. Harpole, 263 F.2d 71 (5 Cir. 1958), cert. den. 361 U.S. 838, 80 S.Ct. 58, 4 L.Ed.2d 78.

■■ Even so, systematic exclusion from jury service on the basis of race is

a defect which may be waived. A guilty plea understandingly and voluntarily entered waives all non-jurisdictional defects, including any defect arising out of systematic exclusion from jury service on the basis of race. Throgmartin v. United States, 424 F.2d 630 (5 Cir. 1970). File v. Smith, 413 F.2d 969 (5 Cir. 1969).

If petitioner's plea of guilty was understandingly and voluntarily entered he waived his right to object to the composition of the juries, and the petition must be denied. The court is thus lead to consideration of the third, and most critical, point raised by petitioner.

### III. VALIDITY OF THE GUILTY PLEA

Petitioner contends that his plea of guilty was not understandingly and voluntarily entered because he was never advised, and did not otherwise know, that he had a right to object to the systematic exclusion of negroes from the grand jury which indicted him and from the petit jury which would have tried him had he gone to trial at the October, 1963 term of the Circuit Court of Holmes County. Petitioner raises no other substantial question as to the validity of his guilty plea.[6]

To support his position petitioner relies primarily upon Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1937); Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); and Ellzey v. Breazeale, 277 F.Supp. 948 (S.D.Miss.1967). Petitioner argues that since waiver is defined in Johnson v. Zerbst, *supra,* as "an intentional relinquishment or abandonment of a known right or privilege," which has recently been restated in Fay v. Noia, *supra,* as "the considered choice of the petitioner," and since it is undisputed that petitioner himself had no knowledge of his constitutional right to object to the systematic exclusion of negroes from jury service in Holmes County, there was no intentional relinquishment or abandonment of a known right or privilege and no considered choice of petitioner and, therefore, no waiver. Petitioner further argues that since he did not knowingly and intentionally waive his right to object to the exclusion from jury service of negroes, his plea of guilty was not understandingly and voluntarily entered, since such a plea would constitute a waiver of such right, and he cannot be held to have waived a constitutional right, the existence of which was unknown to him.

The argument of petitioner ignores the fundamental difference between the waiver resulting from a voluntary and understanding plea of guilty and the type of waiver dealt with in Johnson v. Zerbst, Fay v. Noia, and the other cases cited by petitioner (with the exception of Ellzey v. Breazeale, *supra,* and other cases which will be discussed later), in each of which the defendant plead not guilty and was convicted after a trial on the merits. The well-established rule that a guilty plea knowingly and voluntarily entered waives all nonjurisdictional defects is not merely another rule of waiver. It is the natural consequence and flows from the fundamental nature of the guilty plea. A plea of guilty by a defendant in a criminal proceeding says to the court that the defendant has committed the offense with which he is charged and that he is willing to forego a trial and accept punishment. Assuming the jurisdiction of the court and the representation of the defendant by competent counsel, once the court has satisfied itself that the plea is understandingly and voluntarily entered, it is not required, before accepting the plea, to determine that the defendant was personally aware of each and every right which, had he gone to trial, might have been available to him under the constitution. It would unduly expand the presumption against waivers of fundamental rights to hold that, despite the availability of competent counsel, a defendant must himself be aware of, and agree to forego, each and every right which may

---

6. See footnote 2, *supra.*

be available to him under the constitution in order that his guilty plea be valid. The constitution requires that counsel be available to defendants in criminal prosecutions for the very reason that the learning, experience and independent judgment of counsel is the best guarantee of the protection of the rights of an accused. This court cannot accept the proposition that a guilty plea, otherwise valid, may be successfully attacked on the ground that the defendant did not have personal knowledge of all constitutional rights available to him and did not personally make the decision not to avail himself of them. All defendants in criminal prosecutions are, to a greater or lesser degree, ignorant of their constitutional rights. That is why lawyers are made available to them. But lawyers are not required to educate their clients in constitutional law. They are expected to utilize their training, experience and judgment in acting for and advising their clients who do not possess, and cannot be expected to acquire, the lawyer's training, experience and professional judgment. Petitioner was guaranteed many rights by the constitution in addition to his right to have his case presented to a grand jury from which negroes had not been systematically excluded. If petitioner had elected to go to trial, he had the right to be present in the courtroom and confront the witnesses against him; the right to cross-examination of the prosecution witnesses; the right to testify in his own behalf or to remain silent, as he saw fit; the right to appear in the courtroom free from restraints such as handcuffs or manacles; the right not to be required to appear in the courtroom before the jury in prison garb, and many others. It is probably safe to say that petitioner knew of none of those rights at the time of his guilty plea, and there was no reason for him to know of them. He had decided, upon advice of competent counsel and for reasons of his own, to forego a trial. He knew he had the right to demand a trial, but decided, on advice of counsel, not to do so. Therefore, the rights which petitioner might have exercised had a

trial occurred became immaterial and were therefore waived by the guilty plea. This includes the right to challenge the racial composition of the juries.

Vastly different, of course, is the case in which the defendant does not plead guilty, but instead goes to trial protesting his innocence of the charge and striving for acquittal. In such a case, as the Supreme Court noted in Johnson v. Zerbst, the courts indulge every presumption against waiver of fundamental rights. This is so because it would be contrary to logic and the teaching of human experience not to presume that a defendant insisting upon his innocence and forcing the prosecution to prove its case in an adversary proceeding—a trial on the merits—intends to avail himself of every available right, unless there exists a clear indication that the defendant has intentionally waived such rights. Even in such cases, the principle is subject to limitations. See United States ex rel Goldsby v. Harpole, *supra*.

The waiver of non-jurisdictional defects flowing from a plea of guilty is effective only if the guilty plea is understandingly and voluntarily entered. The requirement that the plea must be voluntary is easily understood. It means that the plea must have been entered as the free and rational choice of the accused and not as the result of threats, coercion or promise of reward. The requirement that the plea must be understandingly entered does not mean that the accused must understand the nature of each and every constitutional right which might be available to him upon a trial, but means that the accused must understand the nature of the charge against him, that he has a right to a trial if he wishes, and the consequences of his plea of guilty. North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). This is the standard for accepting a guilty plea in the federal district court. Rule 11, FRCrP. Here it is clear that the petitioner understood that he was charged with murder, that he had the right to a trial which might result in his being sentenced to

suffer the death penalty, and understood that the consequences of his plea of guilty would be his conviction without trial and his sentence to life imprisonment in the penitentiary.

The arguments made here by petitioner were dealt with and disposed of by the Court of Appeals for the District of Columbia Circuit in Edwards v. United States, *supra,* in an opinion written by then Circuit Judge Warren Burger. That opinion is made especially persuasive by the fact that the writer now serves as Chief Justice of the Supreme Court of the United States. In *Edwards*, the court had this to say:

"It must be realized that this is not a case in which proof of guilt depended upon a trial. In such cases, the accused usually relies to a great extent on counsel to conduct an effective defense, because the accused does not know enough of the law to do so himself. While the accused may have to take the consequences of a poor defense, he may at least say the fault was not his own. But this is not so when he pleads guilty. Here the deed is his own; here there are not the baffling complexities which require a lawyer for illumination; if voluntarily and understandingly made, even a layman should expect a plea of guilty to be treated as an honest confession of guilt and a waiver of all defenses known and unknown. And such is the law. A plea of guilty may not be withdrawn after sentence except to correct a 'manifest injustice,' and we find it difficult to imagine how 'manifest injustice' could be shown except by proof that the plea was not voluntarily or understandingly made, or a showing that defendant was ignorant of his right to counsel. Certainly ineffective assistance of counsel, as opposed to ignorance of the right to counsel, is immaterial in an attempt to impeach a plea of guilty, except perhaps to the extent that it bears on the issues of voluntariness and understanding.

There seems to be little doubt that the plea of guilty was in the present case voluntary. There is no allegation that appellant was induced to plead guilty by any conduct of the police, prosecutor or court, but only that his own counsel's 'bad' advice induced him to plead guilty. This, however, does not itself make out involuntariness. It seems likewise clear that the plea was understandingly made. It may be argued that a plea of guilty is not understandingly made when defendant is unaware of certain technical defenses which might very well make the prosecutor's job more difficult or even impossible were he put to his proof. However, we think 'understandingly' refers merely to the *meaning* of the charge, and what acts amount to being *guilty* of the charge, and the *consequences* of pleading guilty thereto, rather than to dilatory or evidentiary ·defenses. A refusal years after sentencing to give effect to the latter could scarcely be deemed 'manifest injustice' within the meaning of Rule 32(d). Appellant does not try to say he did not do the act charged. He pleads only that, unknown to him, he *might* have been able to suppress the truth as to certain evidence of his crime, and thus, perhaps defeat justice. He cannot be heard to this end after a voluntary, knowing plea of guilty." 256 F.2d, at pp. 709–710.

The Supreme Court in a series of recent decisions has rejected attacks upon the validity of guilty pleas on various grounds, none of which were precisely the same as the grounds relied upon by petitioner here. However, those decisions when considered together unmistakably indicate that the Supreme Court has considerably more respect for the finality of a plea of guilty than the adoption of petitioner's arguments would permit.

In McMann v. Richardson, *supra,* the Supreme Court denied habeas corpus relief to a state prisoner who had entered a plea of guilty to a charge of

robbery upon advice of counsel, holding that the fact that a confession had been coerced from the defendant does not, without more, entitle him to have his conviction upon a plea of guilty set aside. In Parker v. North Carolina, *supra*, a state prisoner also sought to collaterally attack the validity of his plea of guilty on the ground that a confession had been coerced from him, and the Supreme Court denied relief even though it was established that the defendant's decision to plead guilty was based upon the incorrect opinion of his attorney that the confession would be admissible upon trial. The petitioner in that case also raised the question of the validity of the indictment because of systematic exclusion of members of his race from the grand jury which indicted him. The state court refused to consider that claim because the objection was not raised prior to the guilty plea and was thus waived under state law. The Supreme Court was of the opinion that this state rule of practice constituted an adequate state ground for denial of relief on the racial exclusion issue, precluding consideration of that issue by the Supreme Court.[7] It does not appear from the report of the decision whether or not the defendant himself knew of his right to challenge the composition of the grand jury. In Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the Supreme Court held that a plea of guilty induced by the defendant's fear of a possible death penalty in the event of trial was not thereby rendered involuntary. In North Carolina v. Alford, *supra,* the Supreme Court reached the same result and affirmed the validity of the plea of guilty even though the defendant, after pleading guilty, stated that he had not actually committed the offense with which he was charged, but was pleading guilty on the advice of his attorney in order to avoid the possibility of the death penalty.

Ellzey v. Breazeale, *supra,* decided by the United States District Court for the Southern District of Mississippi, is the only reported decision of any court cited by petitioner which supports his position. Despite the high regard of this court for the decisions of its brothers in the Southern District, it is unable to agree with the result reached in that case for reasons already mentioned. *Ellzey's* principal reliance was upon four well-known Fifth Circuit decisions which dealt with the jury exclusion issue,[8] and held there was no waiver of the right to attack the jury system in a common setting of a not guilty plea, trial and conviction of a negro defendant, as distinguished from a plea of guilty.[9]

7. Compare with the provisions of §§ 2449 and 2450, Mississippi Code (1942). Neither the Circuit Court of Holmes County, nor the Supreme Court of Mississippi based their denial of relief upon these statutes, however.

8. United States ex rel. Goldsby v. Harpole, *supra*; United States ex rel. Seals v. Wiman, ·304 F.2d 53 (5 Cir. 1962) ; Whitus v. Balkcom, 333 F.2d 496 (5 Cir. 1964) ; and Cobb v. Balkcom, 339 F.2d 95 (5 Cir. 1964). These cases were analyzed and applied in Gordon v. Breazeale, 246 F.Supp. 2 (N.D.Miss.1965), in an opinion by Judge Claude F. Clayton, then a district judge.

9. In *Ellzey,* counsel was court-appointed and not privately retained as here. Also, following Ellzey's plea of guilty, a trial jury was impaneled and instructed to bring in a verdict of guilty, resulting in a sentence of life imprisonment. These factual differences seem superficial and would not render *Ellzey* distinguishable. Judge Russell was persuaded that "the fact that Ellzey pled guilty under the circumstances stated above [where his court-appointed counsel did not inform the defendant of his right to challenge the grand jury and special venire on the ground that negroes had been systematically excluded therefrom] was not an effective waiver. *His right to object* to the grand jury and the special venire from which his trial jury was drawn, *remains.* Had he known of this right it may or may not have affected his plea." (Emphasis supplied) 277 F.Supp., at pp. 951–952.

Judge Russell adhered to *Ellzey* in his unreported opinion, Windom v. Cook (S. D.Miss. Dec. 5, 1968), upon finding that Windom's pleas of guilty were "freely and voluntarily given in open court and after consultation with effective counsel," and he granted the writ because the

■ In addition, when *Ellzey* was decided, the court did not have the benefit of the decisions of the Supreme Court in *Richardson, Parker, Brady,* and *Alford* cases. Those decisions, as pointed out by the Court of Appeals for the Fifth Circuit in Colson v. Smith, 438 F.2d 1075 (5 Cir. 1971), substantially clarify a heretofore somewhat murky area of the law in the matter of how far habeas corpus petitioners may go in questioning the validity of a guilty plea upon collateral attack. It appears that they may not go so far as petitioner contends.[10]

The rights guaranteed by the constitution stand as the guardians of individual liberty against the encroachments of tyranny and opression. However, as the

Supreme Court says in North Carolina v. Alford, *supra:*

"The prohibitions against involuntary or unintelligent pleas should not be relaxed, but neither should an exercise in arid logic render those constitutional guarantees counterproductive and put in jeopardy the very human values they were meant to preserve." 91 S.Ct., at p. 168.

Life is among the paramount human values. Petitioner chose to guarantee the preservation of his life by entering his plea of guilty. The court is of the opinion that petitioner's plea of guilty was understandingly and voluntarily made, and an order denying the petition will therefore be entered.

record was silent as to whether Windom had been advised by his attorney of his right to object to the exclusion of negroes from the grand jury. While affirming in a per curiam opinion, Windom v. Cook, 423 F.2d 721 (1970), the Fifth Circuit rejected the district court's finding that Windom's pleas of guilty had been entered with the benefit of effective counsel but held instead that on the facts presented Windom did *not* have effective counsel, stating: "Counsel was not in a position to advise Windom prior to allowing him to plead guilty because he was unfamiliar with the case." The appellate opinion emphasized that the failure of counsel to advise an accused of his right to challenge the racial composition of the grand jury is but one element among other factors present which may be considered in determining whether there was effective representation of counsel. We do not understand the case to hold that such failure to advise, standing alone, overrides diligent efforts of counsel and vitiates a plea of guilty otherwise freely and voluntarily made.

10. Petitioner's strong reliance upon the district court's opinion in Colson v. Smith, 315 F.Supp. 179 (N.D.Ga.1970), is misplaced. There Judge Edenfield held on the facts that counsel, by giving the case only perfunctory attention, did not provide effective assistance, although Colson was maintaining his innocence until entering a guilty plea. We decline to fol-

low Judge Edenfield's intimation, which petitioner here seizes upon, that even though Colson's plea of guilty may have been free and voluntary, his conviction nevertheless could not stand if the indicting grand jury was, in fact, unconstitutionally structured as a defect of such nature was of *jurisdictional* proportion which could not be waived except by intentional failure "to exercise his right to be indicted by a fair and impartial jury." The latter view was firmly rejected by the Fifth Circuit when Judge Thornberry wrote as follows:

"At the outset we advert to the settled rule in this Circuit that a voluntary plea of guilty waives all nonjurisdictional defects, including the right to challenge the construction of the grand jury. Williams v. Smith, 5th Cir. 1970, 434 F.2d 592; Throgmartin v. United States, 5th Cir. 1970, 424 F.2d 630. Under this rule, were we to find that petitioner's guilty plea was voluntarily entered, we would be precluded from any consideration of the issue of grand jury composition. Thus we must dispose first of petitioner's attack on his plea of guilty." 438 F.2d at 1078.

Although Judge Edenfield's decision was affirmed, it was on the basis of factual findings that petitioner's guilty plea under the circumstances was "the product of ineffective assistance of counsel", which was a credibility decision not to be disturbed except on a showing of clear error.