Ex rel. Preston COBB, Jr., Appellant,

v.

R. P. BALKCOM, Jr., Warden, Appellee.

No. 21085.

United States Court of Appeals
Fifth Circuit.

Dec. 3, 1964.

---

D. L. Hollowell, Horace T. Ward, Atlanta, Ga., Robert L. Carter, New York City, for appellant.

Albert Sidney Johnson, Asst. Atty. Gen., Eugene Cook, Atty. Gen., Peyton S. Hawes, Jr., Asst. Atty. Gen., Atlanta, Ga., B. Daniel Dubberly, Jr., Glennville, Ga., George D. Lawrence, Sol. Gen., Ocmulgee Judicial Circuit, Eatonton, Ga., for appellee.

Before RIVES and BELL, Circuit Judges, and SPEARS, District Judge.

GRIFFIN B. BELL, Circuit Judge:

Appellant Cobb, having been indicted for murder, was tried and convicted without a recommendation of mercy in the Superior Court of Jasper County, Georgia, on August 16, 1961. Consequently, he was sentenced, on the same day, to death by electrocution. Cobb, a Negro, was the sixth of nine children, and lived with his mother on the victim's farm where both were employed. His father was deceased. He was fifteen years of age at the time of his trial and sentence.

An outstanding member of the Jasper County Bar was appointed by the court to act as his defense counsel on the trial. No challenge was made to the composition of the grand jury or the traverse jury either prior to or during the trial. Present counsel for Cobb were employed a few days after the imposition of sentence, and court-appointed counsel, upon motion, was permitted to withdraw from the representation.

A motion for new trial was then filed in which, for the first time, the constitutional validity of Cobb's indictment, trial and conviction because of the systematic exclusion of Negroes from grand and traverse juries in the trial court was drawn into question. It was also asserted that there had been no valid waiver of this constitutional right either by Cobb individually or through counsel. The evidence in support of these contentions, to be hereinafter detailed, was largely the same as that introduced in support of the petition for writ of habeas corpus in the District Court from which this appeal is taken. The motion for new trial was overruled, and an appeal duly taken to the Supreme Court of Georgia.

That court affirmed, holding that any objection to the composition of the grand jury and the traverse jury was waived upon the failure to challenge the array of the grand jury before indictment or to file a plea in abatement before arraignment; and with respect to the traverse jury, by failing to challenge the array at the earliest opportunity. Cobb v. State, 1962, 218 Ga. 10, 126 S.E.2d 231. The court pointed to the exception where a defendant is not afforded the opportunity to object, in which event the question may be raised by motion for new trial or by a habeas corpus proceeding. Cobb contended he had no fair opportunity to raise the question due to his age, lack of intelligence, and inexperience, and due to the inexperience or reluctance of his court-appointed counsel in such matters. The court concluded that the evidence was sufficient to show that trial counsel was capable of raising the issue, and was authorized to waive the objection in view of Cobb's lack of intelligence, experience, and knowledge sufficient to enable him to decide whether the waiver was beneficial to his defense. The Supreme Court denied certiorari, 371 U.S. 948, 83 S.Ct. 499, 9 L.Ed.2d 497. Thereafter an extraordinary motion for new trial on the ground of newly discovered evidence was filed on behalf of Cobb, and the denial of the motion by the trial court was affirmed on appeal. Cobb v. State, 1963, 219 Ga. 388, 133 S.E.2d 596.

The petition for writ of habeas corpus which is the subject matter of this appeal was then filed in the District Court. It presented the systematic exclusion issue as well as the additional contentions that Cobb was denied due process of law in that his confession was coerced, and that he was denied the effective assistance of counsel because of the failure of trial counsel to apprise him of his constitutional right with respect to the systematic exclusion question, or to explain it to his mother or any other person on his behalf, and because the issue was not raised.

The evidence adduced in support of the petition included sworn statements of the sheriff and deputy clerk of the Superior Court of Jasper County, who had held their positions, respectively, for 21 and 30 years, that no Negroes had ever served on a grand or traverse jury in the county during the past 30 years, that no names of Negroes had ever been placed on the jury lists, and that there were no Negroes on the grand or traverse jury involved in Cobb's case. Each of these officials named ten Negroes whom they believed to be intelligent and upright citizens of the county and who were property owners listed on the tax digest of the county. The tax digest contained the names of 615 Negroes and 2,076 whites. These officials stated also that they had never heard counsel for a Negro defendant in a criminal case raise any constitutional objection to the composition of a jury panel from which the names of grand and traverse jurors were drawn. Cobb stated by affidavit that he had had no prior experience in court or with lawyers and that he did not intend to waive any of his constitutional rights. He had not instructed or authorized his trial counsel to waive any of his rights. It is not contended that the right in question was called to the attention of Cobb or his mother or anyone in *parens patriae* to him. The affidavit of Cobb's trial counsel showed that he had been a member of the Georgia Bar since 1934; that he had defended many Negroes charged with felonies in the county, and that he had never seen a Negro serving on a traverse jury in the county. He stated that he had never raised the issue of systematic exclusion of Negroes from juries because he had never seen a jury panel in the county from which a fair and impartial jury could not be obtained even though there were no Negroes on the panel. He stated that he would have raised the issue in Cobb's case if he had felt that a fair and impartial trial could not be had, and that he is familiar with the procedure to be followed in raising such an issue and would have

done so had be believed it to be in the best interest of Cobb. The District Court denied the petition; this appeal followed, and this court subsequently granted the application of Cobb for a stay of execution pending appeal.

We reverse on the systematic exclusion question. In this view of the case, and because the evidence on the coerced confession question may be different on another trial, we pretermit a ruling as to it. We also pretermit the question of denial of the effective assistance of counsel as guaranteed to a state prisoner by the Sixth Amendment and its inclusion in the Fourteenth Amendment. Powell v. State of Alabama, 1932, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158.

It has long been settled that a Negro defendant in a criminal case is entitled to indictment by a grand jury and trial before a traverse jury from which Negroes have not been arbitrarily and systematically excluded. A conviction cannot stand where such is established for it constitutes a denial of due process and of the equal protection of the laws. Struader v. State of West Virginia, 1879, 100 U.S. 303, 25 L.Ed. 664; Reece v. State of Georgia, 1955, 350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77; and Arnold v. North Carolina, 1964, 376 U.S. 773, 84 S.Ct. 1032, 12 L.Ed.2d 77. The appellate courts of Georgia have long recognized and given effect to this principle. Wilson v. State, 1882, 69 Ga. 224; Crumb v. State, 1949, 205 Ga. 547, 54 S.E.2d 639; and Glass v. State, 1964, 109 Ga.App. 353, 136 S.E.2d 199. See also Allen v. State, 1964, 110 Ga.App. 56, 137 S.E.2d 711, extending the right to challenge a jury composition on this ground to white defendants as well as Negroes, thus demonstrating the abhorrence of the appellate courts of Georgia to any discriminatory selection of jurors.

On the factual question of systematic exclusion, it is not seriously contended that Negroes were not systematically excluded from the juries that indicted and tried Cobb. The evidence adduced below was ample to make out a prima facie

case, and the State offered no evidence to rebut this showing.

■ However, the crux of this case lies not in the recognition of this principle or in its normal effectuation, but whether its protection may be claimed post-trial. As has been noted, the Supreme Court of Georgia considered the question waived by the failure to timely object either as to the composition of the grand jury or the traverse jury, but as we recently pointed out in Whitus v. Balkcom, 5 Cir., 1964, 333 F.2d 496, the scope of the power of a federal court in the administration of its habeas corpus jurisdiction relating to federal constitutional rights may go beyond state court procedural confines. There we relied on Fay v. Noia, 1963, 372 U.S. 391, 83 S. Ct. 822, 9 L.Ed.2d 837, and the language used by the Court in discussing the question of the waiver (there a coerced confession), and the applicability of the doctrine of foreclosure by an adequate and independent state law ground in federal habeas corpus proceedings. The Supreme Court said:

"Although we hold that the jurisdiction of the federal courts on habeas corpus is not affected by procedural defaults incurred by the applicant during the state court proceedings, we recognize a limited discretion in the federal judge to deny relief to an applicant under certain circumstances. Discretion is implicit in the statutory command that the judge, after granting the writ and holding a hearing of appropriate scope, 'dispose of the matter as law and justice require,' 28 U.S. C. § 2243; and discretion was the flexible concept employed by the federal courts in developing the exhaustion rule. Furthermore, habeas corpus has traditionally been regarded as governed by equitable principles. * * *

" * * * The classic definition of waiver enunciated in Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 [1466, 146 A.L.R. 357]—'an intentional relinquishment or abandonment of a known right or privilege'—furnishes the controlling standard. If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forwent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits * * *. At all events we wish it clearly understood that the standard here put forth depends on the considered choice of the petitioner. * * * A choice made by counsel not participated in by the petitioner does not automatically bar relief. Nor does a state court's finding of waiver bar independent determination of the question by the federal courts on habeas, for waiver affecting federal rights is a federal question. * * * (372 U.S. 391, 83 S.Ct. 848, 849, 9 L.Ed.2d 868–69)

" * * * Federal courts have *power* under the federal habeas statute to grant relief despite the applicant's failure to have pursued a state remedy not available to him at the time he applies; the doctrine under which state procedural defaults are held to constitute an adequate and independent state law ground barring direct Supreme Court review is not to be extended to limit the power granted the federal courts under the federal habeas statute. * * * " (372 U.S. 391, 83 S.Ct. 827, 9 L.Ed.2d 845)

The dissent of Mr. Justice Harlan, in which he was joined by Justices Clark and Stewart, is based on the postulate that the controlling question in the federal court in such a situation should be the adequacy or fairness of the state ground. (372 U.S. 391, 83 S.Ct. 866, 9 L.Ed.2d 889) However, the majority

put aside the state ground question as only a rule or practice used by the Supreme Court in the exercise of its appellate jurisdiction over state cases. The duty of the federal habeas court was, according to the majority, to consider the claimed deprivation of federal rights separate and apart, or in isolation [1] from state questions involved in the original trial unless it appears that state procedures have been deliberately by-passed, and, of course, by-passing includes the question of waiver. Moreover, the doctrine requiring that state remedies must be exhausted before relief may be granted in the federal habeas court was limited to state remedies presently available.

We thus proceed to the consideration of whether available state remedies had been exhausted by Cobb prior to his claiming relief in the federal district court, and, if so, then to the question of waiver. The state urges that appellant has not exhausted his state remedy in that the Supreme Court of Georgia has not had a fair opportunity to consider the federal right in issue on the basis of what it refers to as the "new treatment accorded the adequate and independent state ground doctrine" by the Supreme Court in Fay v. Noia, supra.

▆ It is true that this case has not been considered by the Supreme Court of Georgia in the light of Fay v. Noia, and it may well be, as the state urges, that in no case since Noia has the Supreme Court had an opportunity to consider the precise point. On the other hand, the Supreme Court has already held that the failure to object constituted a waiver of the constitutional question presented, and we think this coupled with the present state of the Georgia law on habeas corpus is sufficient to warrant our holding that the state remedy has been exhausted.

▆ It is the Georgia rule that " * * * habeas corpus cannot be used as a substitute for appeal, writ of error, or other remedial procedure for the correction of errors or irregularities alleged to have been committed by a trial court." Wallace v. Foster, 1950, 206 Ga. 561, 57 S.E.2d 920. The writ of habeas corpus is "the appropriate remedy [under the Georgia practice] only when the [trial] court was without jurisdiction in the premises, or where it exceeded its jurisdiction in making the order, rendering the judgment, or passing the sentence by virtue of which the party is imprisoned, so that such order, judgment, or sentence is not merely erroneous, but is absolutely void." Wallace v. Foster, supra; Wells v. Pridgen, 1922, 154 Ga. 397, 114 S.E. 355; Henson v. Scoggins, 1948, 203 Ga. 540, 47 S.E.2d 643; and McKay v. Balkcom, 1948, 203 Ga. 790, 48 S.E.2d 453. It has been held that the constitutional deficiency arising from denial of benefit of counsel may be raised by habeas corpus, but not a systematic exclusion question. Wilcoxon v. Aldredge, 1941, 192 Ga. 634, 15 S.E.2d 873, 146 A.L.R. 365. The distinction was said to be that the deprivation of counsel is such a fundamental and radical error that it operates to render the trial illegal and void, and hence subject to remedy by habeas corpus. The jury question was treated as a right which might be waived by either negligently or purposely standing silently by, taking the chance of acquittal, and upon conviction seeking then to nullify the trial.

Whether the Supreme Court of Georgia is to extend habeas corpus to include consideration of a federal right such as is here presented will depend on expansion of that remedy to accord with federal concepts as taught by Fay v. Noia. This, perforce, will mean treatment of the waiver doctrine in a manner no more stringent than the federal concept. See Accommodating State Criminal Procedure and Federal Postconviction Review, Meador, 50 Amer. Bar J. 928 (Oct., 1964). In any event, it follows that we cannot say at this point in the Georgia

---

1. Sofaer, Federal Habeas Corpus for State Prisoners: The Isolation Principle, 39 N.Y.U.Law Rev. No. 1, p. 78 (1964)

law that there is a presently existing state remedy available to the appellant.

This leaves for consideration whether we should give effect to the bar of waiver as was done in the state courts. The purported waiver here must be tested, as Fay v. Noia teaches, in the light of whether there was " * * * an intentional relinquishment or abandonment of a known right * * * " i. e., the right to indictment by a grand jury and trial before a traverse jury from which Negroes are not arbitrarily and systematically excluded.

This court has been confronted with the question of systematic exclusion on appeals from federal habeas courts on at least three previous occasions. In United States ex rel. Goldsby v. Harpole, 5 Cir., 1958, 263 F.2d 71, cert. den., 361 U.S. 838, 80 S.Ct. 58, 4 L.Ed.2d 78, the defendant was charged with murder and represented by counsel of his choice from the presentment hearing forward. Counsel failed to claim systematic exclusion during the trial or on appeal to the state supreme court, and the point was raised for the first time on certiorari to the United States Supreme Court. We distinguished between the importance of grand jury indictment and trial by jury and held that defendant had not waived his right with respect to the trial jury. Our holding was based on the fact that there was no express authorization of the waiver by the defendant and, considering the gravity of the charge, such authorization would not be implied.

In United States ex rel. Seals v. Wiman, 5 Cir., 1962, 304 F.2d 53, cert. denied, 372 U.S. 915, 83 S.Ct. 717, 9 L.Ed.2d 722, the evidence of systematic exclusion rested on the fact of an insufficient number of Negro jurors on the jury roll, rather than no Negro jurors at all. No objection was made before or during trial to the composition of either the grand or trial jury. We held

that defendant Seals had not waived his constitutional rights to either jury. Trial counsel for Seals did not consult with him regarding his rights, and the evidence on which to base an objection was not known to him or to Seals. The grand jury waiver principle of Harpole was not followed in view of the fact that the evidence of systematic exclusion was not known or easily ascertainable.

We then held in Whitus v. Balkcom, supra, application for certiorari pending, 85 S.Ct. 329, that the defendant had not waived his right to object to systematic exclusion of Negroes, either as to the grand or trial jury. The distinguishing feature of that case, over Harpole and Wiman, was that his trial counsel testified that he did not raise the issue as to the trial jury because of the hostility that might have been created by such an objection which, in turn, would have rendered the possibility of an acquittal almost impossible. The right was not discussed by counsel with the defendant, but no weight was given to this fact. We held that a waiver stemming from a failure to object is ineffective where an accused is compelled to choose between an illegally constituted jury and the prejudice which may be engendered in the jury if the challenge is made. It was described in that case as a Hobson's choice, and a burden which falls only on Negro defendants. Both the grand and trial jury fell under the proscription. Based on the testimony of Whitus' lawyer, there was no possibility of a voluntary choice based on meaningful alternatives.[2]

In summary, then, the prior decisions of this court have established three situations, all capital cases, in which a state criminal defendant's failure to object to jury composition will not constitute a waiver barring relief on federal habeas corpus. If defendant's counsel fails to consult with him concerning his rights (Harpole), or where there is failure to

---

2. We are not presented here with a waiver case where a
"particular jury was desired by defendant's counsel after conscientious

consideration of that course of action which would be best for his client's cause," see United States ex rel. Goldsby v. Harpole, supra.

consult plus the fact that the evidence of systematic exclusion is neither known nor easily ascertainable at the time of trial (Wiman), or where the defendant or his counsel failed to object through fear of engendering hostility (Whitus), there is no valid waiver. In Harpole the waiver was ineffective as to the trial jury, but the plus facts of Wiman and Whitus made the waiver ineffective as to both juries.

■■ We think this case is controlled by Harpole. Trial counsel did not discuss the right with Cobb or his mother or anyone acting for Cobb. There was no express waiver by Cobb either of his right to challenge the grand jury indictment or the trial jury. His lawyer was satisfied with the grand and trial juries, but this is insufficient. Moreover, considering Cobb's age and inexperience, the fact that he never had a lawyer until after indictment, and the known illegal composition of the grand jury, we feel that Harpole should be extended to cover the grand jury in the present case. In sum, there was no intentional relinquishment of a known right within the purview of the majority opinion in Fay v. Noia, and for the state to subject a defendant to this situation amounts to a denial of due process and equal protection of the laws guaranteed by the Fourteenth Amendment. What constitutes a valid waiver in this instance is a federal question, and with all deference to the Supreme Court of Georgia, we hold that Cobb's federal rights were not abandoned.

■ The District Court erred in having dismissed the petition for the writ. There was no waiver of the basic constitutional right to a grand jury and a traverse jury from which Negroes had not been arbitrarily and systematically excluded. Of course, Cobb is subject to reindictment and may be retried, but he is entitled to be retried within a reasonable time. Eight months from and after the entry of this judgment or its final test by certiorari, or otherwise, should be a sufficient period within which the state may, if it desires, take the necessary steps to reindict and retry him. It goes without saying that any such reindictment must be by a grand jury from which Negroes have not been systematically excluded, and any such retrial must be before a jury, if a jury trial is to be had, from which Negroes have not been systematically excluded. See Whitus; Wiman; and Harpole, all supra, for the procedure to be followed.

The judgment of the District Court is reversed and judgment here rendered in accordance with the holdings of this opinion, and the cause is remanded for such other and further proceedings as may be found necessary or proper.

Reversed, rendered and remanded.