**Matthew WINTERS, Petitioner-Appellant,**

v.

**Thomas D. COOK, Superintendent of The Mississippi State Penitentiary, Respondent-Appellee.**

**No. 71-3323.**

United States Court of Appeals, Fifth Circuit.

Sept. 20, 1972.

On Petition for Rehearing and Rehearing En Banc Jan. 2, 1973.

---

**1394**

Roy S. Haber, George Peach Taylor, Jackson, Miss., for petitioner-appellant.

A. F. Summer, Atty. Gen., Guy N. Rogers, Asst. Atty. Gen., Jackson, Miss., for respondent-appellee.

Before JOHN R. BROWN, Chief Judge, and RIVES and CLARK, Circuit Judges.

RIVES, Circuit Judge:

In April of 1963 Winters, a Negro male, was indicted in Holmes County, Mississippi, for the murder of E. T. Branch, a male caucasian. At his arraignment, Winters pleaded not guilty. Six months later, on the date for which trial had been set and with the advice of counsel, Winters changed his plea to guilty. He was sentenced to life imprisonment.

On October 6, 1969, Winters filed a motion in State court to vacate his sentence, alleging *inter alia* that "[a]t the time of the indictment and plea, and for a long time prior thereto, there was and continues to be a system and practice in the organization and selection of jurors in Holmes County which is deliberately designed to exclude members of the Negro race from service on the grand and petit juries in violation of the Fourteenth Amendment of the Constitution of the United States." (App. at 46.) At a hearing on the motion, it became clear that at the time Winters entered his plea of guilty he was unaware of his right to challenge the composition of the jury. Though Winters' counsel had cognizance of the right, he did not inform Winters. Nor did the trial court instruct Winters as to that right. On December 11, 1969, the State court dismissed Winters' motion, stating that "The petitioner knowingly, intelligently and voluntarily entered his plea of guilty upon the advice of competent counsel. The petitioner's voluntary guilty plea waived all nonjurisdictional defects." (App. at 108.) That decision was affirmed, February 8, 1971, by the Mississippi Supreme Court. 244 So.2d 1.

Thereafter, Winters instituted this suit in the United States District Court for the Northern District of Mississippi, seeking habeas corpus relief. Again he asserted his constitutional right to indictment and trial by a grand and petit jury from which Negroes are not excluded. He contended that his guilty plea was not a bar to relief, first because he was denied effective assistance of counsel, and second because his plea was not a waiver of his right to challenge the array of jurors in that he was unaware of such right when he entered his plea. The district court denied relief. We reverse.

We start with the rubric that a voluntary plea of guilty waives all

known nonjurisdictional defects, including the constitutional right to challenge the composition of the grand and petit juries. Colson v. Smith, 5 Cir. 1971, 438 F.2d 1075, 1078;[1] Williams v. Smith, 5 Cir. 1970, 434 F.2d 592; Throgmartin v. United States, 5 Cir. 1970, 424 F.2d 630. Both the State courts and the district court in this case held that Winters' plea of guilty waived his right to complain of the array of jurors in Holmes County. The rationale for such view is that Winters' lawyer knew of the right and that by failing to raise the objection counsel effectively waived the right for Winters. But it is axiomatic that Winters is the one who must make the waiver, not his attorney.[2] Winters had no idea that he could object to the jury composition. Before a waiver can be effective it must be

1. In this case we hold that Winters did not waive his right to challenge the jury composition because he was not aware of such right. We do not reach the issue whether a jury from which blacks are systematically excluded constitutes a jurisdictional or a nonjurisdictional defect. Although it was strongly intimated in *Colson* that where Negroes are excluded from the jury the defect is nonjurisdictional, the Supreme Court has recently ascribed such fundamental status to the right to be tried by a jury from which Negroes are not systematically excluded that we have some doubt as to the validity of the implications in *Colson*. See Peters v. Kiff, 1972, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83.

2. We say "axiomatic" because, as indicated, the waiver, if any, was accomplished by Winters' plea of guilty; and it is plain error for a trial court to accept a plea of guilty without an affirmative showing that the defendant himself intelligently and voluntarily entered his plea. Boykin v. Alabama, 1969, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274. "What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequences", *Boykin, supra*, 395 U.S. at 243, 244, 89 S.Ct. at 1712. The voluntariness of the plea "can be determined only by considering all of the relevant circumstances surrounding it." Brady v. United States, 1970, 397 U.S. 742, 749, 90 S.Ct. 1463, 1469, 25 L.Ed. 2d 747. A plea of guilty waives the defendant's constitutional right to trial. Such a waiver not only must be voluntary but must be a knowing, intelligent act done with "awareness of the relevant circumstances and likely consequences." The defendant must have an opportunity, either with or without the help of counsel, to make "an intelligent assessment of the relative advantages of pleading guilty," *Brady, supra*, 397 U.S. at 748 n.

6, 90 S.Ct. at 1469, to "rationally weigh the advantages of going to trial against the advantages of pleading guilty", *Brady, supra*, 397 U.S. at 750, 90 S.Ct. at 1470.

For Winters, the most important, perhaps the only, advantage of going to trial was his right to challenge the racial composition of the grand jury and the petit jury. Neither Winters nor his family were ever advised of that right. (333 F.Supp. 1033, 1038, 1039). The district court found that "At no time did either petitioner's attorney or the state court advise petitioner of his right to challenge the racial composition of either the grand or petit juries, and petitioner was not aware of that right." (333 F.Supp. 1040.) Winters' attorney took upon himself the responsibility of deciding. See the part of his testimony quoted by the district court in 333 F.Supp. at 1039 n. 4, including, "Well, insofar as making decisions are concerned, I accepted the responsibility of this man's destiny when I accepted employment. I was representing him to the best of my ability, and I cannot say I would have allowed him to make any decision which I felt would put his life in jeopardy."

The district court summarized Winters' charge of racial discrimination as follows: "Thus, it is alleged, approximately 70% of the jury qualified males in the County were negroes, and that at the time of the indictment and sentencing of petitioner few, if any, negroes had ever been called for jury service." (333 F.Supp. 1041.) If the proof sustains that charge, then such an extreme discrimination could not exist without the knowledge of the State trial judge. It was his duty to ascertain that Winters had knowledge of his relevant rights. If the averments of the habeas petition are proved, it will necessarily follow that the trial judge accepted Winters' plea of guilty "without an affirmative showing that it was intelligent and voluntary." We must conclude that Winters' plea of guilty did not waive his right to complain of the array of jurors in Holmes County, Mississippi.

knowingly given. Since Winters had not been informed of the right, his waiver did not encompass its relinquishment.

We need not consider Winters' contention that counsel was ineffective, for his claim for relief is amply supported by the more basic and fundamental proposition that he did not knowingly waive a right of which he was unaware. As we said in Cobb v. Balkcom, 5 Cir. 1964, 339 F.2d 95, 98, 102:

"We * * * pretermit the question of denial of the effective assistance of counsel as guaranteed to a state prisoner by the Sixth Amendment * * *.

&ast; &ast; &ast; &ast; &ast; &ast;

"Trial counsel did not discuss the right with Cobb or his mother or anyone acting for Cobb. There was no express waiver by Cobb either of his right to challenge the grand jury indictment or the trial jury. His lawyer was satisfied with the grand and trial juries, but this is insufficient. * * * * In sum, there was no intentional relinquishment of a known right within the purview of the majority opinion in Fay v. Noia [1963, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837], and for the state to subject a defendant to this situation amounts to a denial of due process and equal protection of the laws guaranteed by the Fourteenth Amendment. What constitutes a valid waiver in this instance is a federal question, and with all deference to the Supreme Court of Georgia, we hold that Cobb's federal rights were not abandoned."

In this case Winters' attorney was satisfied with the grand and petit juries. But the question is whether Winters would have been similarly content had he been fully aware of his rights.

■ The underpinnings of *Cobb* are found in United States ex rel. Goldsby v. Harpole, 5 Cir., 263 F.2d 71, cert. denied, 1959, 361 U.S. 838, and 850, 80 S. Ct. 58, and 109, 4 L.Ed.2d 78, and 89, and its rationale was followed in Labat v. Bennett, 5 Cir. 1966, 365 F.2d 698,

cert. denied, 1967, 386 U.S. 991, 87 S.Ct. 1303, 18 L.Ed.2d 334. Although neither *Goldsby* nor *Labat* involved waiver by a guilty plea, but rather concerned waiver by failure to raise a timely objection to the array of jurors, they are indistinguishable from a guilty plea context. The fundamentals of the doctrine of waiver are the same no matter what form the waiver takes, be it waiver by inadvertent delay in asserting a right or waiver by a plea of guilty. The party giving the waiver must know of his rights before we can hold that he has relinquished them. *E. g.*, Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; *Labat, supra.*

That white lawyers representing black clients often fail to raise an objection to jury composition has been recognized as a problem in this Circuit. Whitus v. Balkcom, 5 Cir. 1964, 333 F.2d 496, 506–507; *Goldsby, supra*, 263 F.2d at 82. The problem has surfaced in this case. Winters' attorney testified that although he has represented many Negro defendants he has never objected to an array of jurors. In recognition of this difficulty we have said that "the conduct of * * * counsel without consultation with his client did not bind [the client] to a waiver of his constitutional right to object to the systematic exclusion of members of his race from" the jury. United States ex rel. Seals v. Wiman, 5 Cir. 1962, 304 F.2d 53, 68. See words to similar effect in *Goldsby, supra*, 263 F. 2d at 82–83. We will not, in this case, retreat from that view.

■ The district court implied that recent decisions of the Supreme Court have somehow undermined the validity of *Goldsby, Seals, Cobb, Whitus* and *Labat.* See Brady v. United States, 1970, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747; McMann v. Richardson, 1970, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763; Parker v. North Carolina, 1970, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785. We cannot accept that view. Granted, the Supreme Court has given its approval to the plea bargaining process, but in doing so it in no way derogated the notion

that to be effective as a waiver a guilty plea must be knowingly given. Put shortly, without having been informed of his right to object to the systematic exclusion of Negroes from the grand and petit juries of Holmes County, Winters cannot be held to a waiver of that right even though he pleaded guilty.[3]

Of course there has been no fact finding in this case that Negroes were systematically excluded from the grand and petit juries in Holmes County, Mississippi, at the time of Winters' indictment and conviction. Accordingly we reverse and remand for an evidentiary hearing on the issue of whether Negroes were in fact systematically excluded.

Reversed and remanded.

CLARK, Circuit Judge, dissents.

CLARK, Circuit Judge (dissenting):

The majority opinion adopts the premise that the result in this case is required by the prior decisions of the court and disavows any "retreat from that view." With all deference, I view that disavowal as wholly unnecessary, since I see the result reached by the majority as nothing less than a headlong charge into an area which has heretofore been only occasionally entered, and then with discretion and circumspection. Both precedent and reason forbid my concurrence.

The facts and procedural background of this litigation are well documented in a lucid opinion by the district court, 333

F.Supp. 1033 (N.D.Miss.1971), and need not be published again.

If it was less than crystal clear before, Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), wiped away all doubt that every waiver of a constitutionally protected right had to be intelligent and understanding to effectively foreclose federal habeas corpus relief, 372 U.S. at 439, 83 S.Ct. at 849. However, *Fay* went on to say that "[a] choice made by counsel not participated in by the petitioner does not automatically bar relief." Id. The implication of this last statement—that some strategic decisions which entail the waiver of a constitutional right may be made by counsel without consultation with the accused—was made express in Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965) in these words:

> Although trial strategy adopted by counsel without prior consultation with an accused will not, *where the circumstances are exceptional,* preclude the accused from asserting constitutional claims, see Whitus v. Balkcom, 333 F.2d 496 (C.A. 5th Cir. 1964), we think that the deliberate bypassing by counsel of the contemporaneous-objection rule as a part of trial strategy would have that effect in this case. (Emphasis supplied.) 379 U.S. at 451–452, 85 S.Ct. at 569.

Prior to today's holding, it is fair to say that the rule of *Henry* required the courts of this circuit to determine whether the circumstances of the partic-

---

3. Mississippi law in effect provides that unless a defendant objects to the composition of the jury before indictment, his right to do so is waived. Miss.Code of 1942 §§ 2449, 2450. In Parker v. North Carolina, *supra*, the Supreme Court refused to invalidate a similar statutory scheme on review of a state habeas corpus type proceeding. However, the Court stated quite clearly that:

   "Whether the question of racial exclusion in the selection of the grand jury is open in a federal habeas corpus action we need not decide. Compare United States ex rel. Goldsby v. Harpole, 263 F.2d 71 (C.A.5th Cir.), cert. denied, 361 U.S. 838 and 850 [80 S.Ct. 58

   and 109, 4 L.Ed.2d 78 and 89] (1959), with Labat v. Bennett, 365 F.2d 698 (C.A.5th Cir. 1966), cert. denied, 386 U.S. 991 [87 S.Ct. 1303, 18 L.Ed.2d 334] (1967). See also McNeil v. North Carolina, 368 F.2d 313 (C.A.4th Cir. 1966)."
   397 U.S. at 798–799, 90 S.Ct. at 1463. In this Circuit it is settled that such a statutory scheme does not bar federal habeas corpus relief where the defendant was unaware of his right to complain of the jury's composition. *Labat, supra; Goldsby, supra.* Moreover, neither the State courts nor the district court relied on the Mississippi statutes cited above in denying relief to Winters.

ular case before them would be sufficiently exceptional to lift the bar of waiver of constitutional claims which had been created by the good faith actions of a personally retained attorney. The majority opinion now creates a per se rule that even an intentional, strategic waiver by such a lawyer of his client's constitutional rights cannot be binding. Specifically, the opinion states:

> Both the State courts and the district court in this case held that Winters' plea of guilty waived his right to complain of the array of jurors in Holmes County. The rationale for such view is that Winters' lawyer knew of the right and that by failing to raise the objection counsel effectively waived the right for Winters. *But it is axiomatic that Winters is the one who must make the waiver, not his attorney.* Winters had no idea that he could object to the jury composition. Before a waiver can be effective it must be knowingly given. Since Winters had not been informed of the right, his waiver did not encompass its relinquishment. (Emphasis supplied.)

Under this reasoning, the exception which *Henry* explicated has swallowed the basic rule on which it was engrafted. "Axiomatic" or not, on the authority of *Henry* and on the basis of common sense practicalities I would reject the syllogism that since the rights are those of the defendant, only he may waive them. Rather than relying on axioms, I submit that this court should have made an examination of the circumstances of this case to determine whether they were so "exceptional" as to justify departing from the general rule.

Surely a lawyer should not be required to explain to his client every possible constitutional claim that might conceivably be made at the many stages of indictment, plea, trial and appeal. *See* Developments in the Law—Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1110–11 (1970). To require an explanation of even the most important rights afforded by the Constitution, with the advantages and disadvantages of raising each issue, in terms such that the defendant could make an intelligent and knowing waiver creates a heavy burden for both clients and lawyers. To extend the attorney's duty to include the responsibility to inform the defendant of every possible constitutional claim would make the burden unbearable. Particularly is this true where, as in this case, the defendant is illiterate.[1]

Our Constitution has been held to afford all criminal defendants the right to counsel. The cardinal precept upon which the reasoning of this right is predicated is that most defendants are untutored in the law. Unqualified to present his own defense and having privately employed counsel of his choice so he would have the benefit of legal representation, it seems most incongruous to reflexively allow this defendant to void his conviction when his lawyer did what he was retained to do—use his skill and knowledge of the law to further the best interests of his client—because the lawyer did not reason out his actions with his client. Moreover, I conjure up no unreasonable spectres when I predict that the sure consequences of the reasoning of the majority will be a veritable deluge of claims for post-conviction relief alleging that the petitioner's attorney took this or that action without fully consulting the petitioner and obtaining his knowing agreement.

Case law demonstrates that circumstances justifying such a departure may be grouped in two broad categories: first, where there is evidence of fraud,

---

1. On facts somewhat similar to the ones in the case at hand, this court has said:

   It is unrealistic for this court to attach significance to the presence or absence of consultation of the attorneys with the defendants to the so-called waiver.

Whitus v. Balkcom, 333 F.2d 496, 503 (5th Cir.) cert. denied 379 U.S. 931, 85 S.Ct. 329, 13 L.Ed.2d 343 (1964). *See also* Cobb v. Balkcom, 339 F.2d 95, 101 (5th Cir. 1964).

or gross negligence or incompetence on the part of the defendant's attorney; and, second, where an inherently personal right of fundamental importance is involved.

As to the first category, there is absolutely no evidence in this record that the attorney for the defendant did anything other than to conscientiously represent the defendant to the best of his ability. The evidence produced in the District Court clearly shows that counsel for the defendant carefully considered the possibility of raising the constitutional objections to the composition of the jury, but rejected that course of action in favor of a plea of guilty. By such a plea his client was assured of receiving a recommendation from the prosecution of a life sentence (with a possibility of a parole after serving ten years), thus avoiding what counsel considered (and I agree) was the distinct possibility of the death sentence. Counsel testified that these constitutional objections were the "pry pole" that he used in getting the state to allow the defendant to enter a guilty plea. In his opinion as an experienced criminal attorney, he was utilizing this unlawful condition in the most effective way. Even the most skillful trial tactician should be hard pressed to fault counsel's considered and conscientious strategy to waive this option in return for practical assurance that his client's life would not be lost. Where, as here, a privately retained lawyer who is well-versed in the defense of murder charges deliberately refrains from making a known constitutional objection to the composition of the jury in exchange for important and material concessions from the prosecution, there has been a deliberate by-pass and waiver under *Fay* and *Henry*. If the jury exclusion claim had been successfully asserted, it would only have gone to the procedure of trial. At most this would have merely postponed the day of the final judgment. These being the circumstances, I simply cannot say that because the attorney did not inform the defendant of this possible constitutional claim, the deliberate waiver is vitiated.[2]

On the facts of this case, I cannot say any able defense lawyer would have

2. The majority opinion almost, but not quite, says that the attorney in this case breached his duty of undivided fidelity to his client's interests because he traded with the fact of grand and petit jury exclusion rather than filing formal objections. "The problem" to which the majority alludes must be based upon the assumption that a white lawyer, fearing that such an affront to existing mores would bring community opprobrium down upon him, will put self interest before his client's good. This theory had its genesis in United States ex rel. Goldsby v. Harpole, 263 F.2d 71 (5th Cir.) cert. denied 361 U.S. 850, 80 S.Ct. 109, 4 L.Ed. 2d 89 (1959), where it was written:

As Judges of a Circuit comprising six states of the deep South, we think it is our duty to take judicial notice that lawyers residing in many southern jurisdictions rarely, almost to the point of never, raise the issue of systematic exclusion of Negroes from juries. 263 F.2d at 82.

Such "judicial notice" is improper in today's case for two reasons. First, it is directly refuted by the evidence. The district attorney, an elected official much more sensitive to community reaction than petitioner's attorney, was persuaded by the use of this possible defense to intercede with the court for a guilty plea and a prison term sentence in an easy-to-prove case of cold-blooded interracial murder.

Second, this court is in error, and has been since *Goldsby*, in taking judicial notice of what is no more than judge-created surmise. A by no means exhaustive examination of the reported decisions of the Mississippi Supreme Court reveals more than twenty cases decided prior to petitioner's plea of guilty, where such an objection was raised. In the years immediately succeeding petitioner's plea the frequency was higher and it is practically certain that the number of times such pleas or the active use of the leverage of such a position by defense counsel took place in unreported trial court situations is much, much greater.

Insofar as this erroneous judicial knowledge would fault the attorney's judgment here, it is not inappropriate to note that in *Goldsby* and either of the cases examined, the defense was effectively raised, but the defendant was eventually executed after retrial with a proper jury. A Pyrrhic victory indeed!

made or allowed an illiterate client to make a different decision. Even conceding, *arguendo*, that the attorney was mistaken in his decision not to attack the jury composition, surely that judgment was well "within the range of competence demanded of attorneys in criminal cases." McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). Thus, it is clear this case does not fall within this first branch of exceptions to what should be the general rule.

It does not fall within the second branch of the exception either. It is not such an inherently personal fundamental right that it can be waived only by the defendant and not by his attorney. Such personal fundamental rights include the right to plead guilty (which of course encompasses the waiver of numerous rights), the right to waive trial by jury, the right to waive appellate review and the right to testify personally. See Developments in the Law—Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1011 *n.* 102 (1970). Without intimating any opinion as to whether these fundamental rights can never be waived by an attorney for his client, it is sufficient for the purposes of this case to point out that the right to be tried by a constitutionally composed jury is not one of the rights traditionally considered so inherently personal that only the defendant may waive it. The decisions cited by the majority, rather than supporting the proposition that only the defendant may waive this right, are foursquare against it. United States ex rel. Goldsby v. Harpole, *supra n.* 2, stated:

> The evidence in this case . . . fairly considered shows no waiver by the appellant himself but at most by his counsel without his express authority. In ordinary procedural matters, the defendant in a criminal case is bound by the acts or nonaction of his counsel. That might extend to the waiver of the objection that Negroes were systematically excluded from the grand jury. In noncapital cases, it might extend to a like waiver as to the petit jury. *It might extend to such a waiver even in capital cases, where the record affirmatively shows that the particular jury was desired by defendant's counsel after conscientious consideration of that course of action which would be best for the client's cause.* 263 F.2d at 83. (footnotes omitted) (emphasis added).

In Whitus v. Balkcom, 333 F.2d 496 (5th Cir.), cert. denied 379 U.S. 931, 85 S.Ct. 329, 13 L.Ed.2d 343 (1964), noted with approval in Henry v. Mississippi, *supra,* 379 U.S. at 451–452, 85 S.Ct. 564, we quoted the language of Goldsby and stated that in the circumstances described there could be a "true waiver based on a free option." 333 F.2d at 502.

In Cobb v. Balkcom, 339 F.2d 95 (5th Cir. 1964) there was no evidence of any deliberate bypass by counsel for the defendant. The court properly held that the lawyer's statement that he was satisfied with the jury was "insufficient" to show an intent to waive a right to achieve a strategic advantage. There was no showing, as there is in the instant case, that the defense counsel had made positive use of the constitutional right in any manner. The court specifically pointed out that "[w]e are not presented here with a waiver case where a 'particular jury was desired by defendant's counsel after conscientious consideration of that course of action which would be best for his client's cause,' see United States ex rel. Goldsby v. Harpole, supra." 339 F.2d at 101 *n.* 2.[3]

---

3. In Labat v. Bennett, 365 F.2d 698 (5th Cir. 1966), cert. denied 386 U.S. 991, 87 S.Ct. 1303, 18 L.Ed.2d 334 (1967), the court specifically noted that there was no contention of a deliberate bypass by the defendant. 365 F.2d at 710.
United States ex rel. Seals v. Wiman, 304 F.2d 53 (5th Cir. 1962), involved a situation where the evidence on which to base the constitutional claim was unavailable to the defendant or his counsel at the original trial. Since the evidence was not available it was held that there could be no deliberate bypass. *See* 304 F.2d at 69. *See also* Whitus v. Balkcom, *supra,* 333 F.2d at 502.

From this discussion it can be seen that, prior to today, the rule that a constitutional objection to the composition of the jury might be waived by an attorney without consultation with his client where there is "conscientious consideration of that course of action which would be best for his client's cause" was well established as the law of this circuit. So undeviating precedent commands that I dissent from the "axiomatic" rule that an attorney may never waive an objection to the composition of a jury without consultation with his client.

Even were the precedents not so uniform, I would nevertheless feel compelled to file this dissent. The original pronouncement of the rule in *Goldsby* is correct as a statement of what the law should be. Neither fairness, justice, nor common sense can condone voiding the conviction of this petitioner merely because the attorney who represented him did not explain every possible constitutional claim. Where, as here, there is no showing whatsoever of prejudice to the petitioner as a result of the attorney's failure to inform him of the right, I believe the majority is distorting the limited privilege to reexamine claims waived in the trial court into a license to seize upon a pragmatically meaningless circumstance to void a solemn and final judgment.

There is yet another reason why the result announced by the majority should not prevail. Despite the protestations of the majority that, considering "fundamentals", a waiver is a waiver is a waiver, the law recognizes a world of difference between a waiver resulting from a failure to object to the composition of a jury which actually convicts a defendant and one created by a plea of guilty where no jury is ever involved.[4]

The Supreme Court has taught us that a liberal measure of finality is to be accorded to a plea of guilty by a criminal defendant. *See* McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). If the plea is intelligent and voluntarily made, it is binding. As the decision in McMann points out:

> In our view a defendant's plea of guilty based on reasonably competent

---

4. The opinion of the majority lumps together the claims that both the grand jury and petit jury were unlawfully constituted. Until today, I had considered it well established that *at least* the right to challenge the composition of the grand jury could be waived by counsel. *See* Goldsby, *supra*, 263 F.2d at 84. Labat v. Bennett, *supra*, is not to the contrary. See 365 F.2d at 739 (Bell, J., concurring). In Whitus v. Balkcom, *supra*, 333 F.2d at 501–502, the court in discussing *Goldsby* stated:

> With regard to the grand jury, Judge Rives observed that systematic exclusion of Negroes from a grand jury involves consequences less serious than the consequences of their exclusion from a trial jury. The Court held that the petitioner had waived any objection to the grand jury.

Furthermore, this court frequently had given the widest possible latitude—and presumptive validity—to counseled, voluntary guilty pleas. *See, e. g.,* Allen v. Campbell, 456 F.2d 912 (5th Cir. 1972); Colson v. Smith, 438 F.2d 1075 (5th Cir. 1971); Williams v. Smith, 434 F.2d 592 (5th Cir. 1970); Throgmartin v. United States, 424 F.2d 630 (5th Cir. 1970). "Like a verdict of a jury it is conclusive." Zales v. Henderson, 433 F.2d 20, 23 (5th Cir. 1970). Now we revert to a rule which makes a requirement that the client must have known the checklist of rights his plea foregoes. Presumably, instead of giving up all non-jurisdictional defenses, he only surrenders those rights which have been explained to him and expressly waived. One final note, the petitioner is not attempting to and should not be able to found any claim on his attorney's failure to challenge the petit jury. The guilty plea obviated the occasion for such a plea and therefore the necessity for such an objection. His claim is founded solely on the failure of counsel to specifically confer with him about this legality.

advice is an intelligent plea not open to attack on the ground that counsel may have misjudged the admissibility of the defendant's confession. Whether a plea of guilty is unintelligent and therefore vulnerable when motivated by a confession erroneously thought admissible in evidence depends as an initial matter, not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases. 397 U.S. at 770–771, 90 S.Ct. at 1449 (footnote omitted)

If McMann stands for the proposition that habeas corpus is not available where counsel has given erroneous advice to his client who pleads guilty as a result thereof, surely we should not intervene where the attorney merely failed to inform his client of a single possible constitutional claim which he thought best to use as coin for barter with the prosecution. Where the attorney reached a more than arguably correct decision involving many complicated and uncertain variables, we should not impose a rule requiring that he inform his client as to the precise nature of each variable. A lawyer ought not have to conduct a course in constitutional law for his client to validly discharge his position of trust.

The possibility of prejudice in this case is less than a gossamer one. I have no doubt but that petitioner would have pleaded guilty even if he had known of his constitutional claim. If the rule proscribing more severe penalties on retrial had not existed, thus allowing him to seek a new trial without sacrificing the advantage he secured by his guilty plea, this petition would never have been exposed to the clerk's file stamp. Lawyers worth their salt, as the one condemned today most certainly is, acutely feel the oppressive weight of professional responsibility when it must carry the stake of human life. I say counsel here fully merited the confidence bestowed on him. This decision not only misjudges the man, it does violence to our system of justice. I respectfully dissent.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before JOHN R. BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, INGRAHAM and RONEY, Circuit Judges.

### BY THE COURT:

A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc.

It is ordered that the cause shall be reheard by the Court en banc on briefs without oral argument. The Clerk shall set a briefing schedule for the filing of supplemental briefs.